UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GEICO MARINE INSURANCE
COMPANY, a Maryland
Corporation,

    Plaintiff,

GREGORY SHAND,

    Intervenor Plaintiff,

v.                                        Case No.:  2:21-cv-829-SPC-KCD

AMZIM MARINE SERVICES, LLC
and PORTER INC.,

    Defendants.
_____/

## ORDER

Before the Court is Defendant Porter Inc.'s Motion to Transfer Venue (Doc. 57). Intervenor-Plaintiff Gregory Shand has responded (Doc. 59), making this matter ripe. For the reasons below, Porter's motion is granted.

### I. Background

This dispute concerns a boat—the "40 foot 2017 Formula Boats brand vessel named Svaha." (Doc. 33 ¶ 1.) Intervenor-Plaintiff Gregory Shand and his wife purchased the Svaha from Porter (its manufacturer) in 2017. (*Id.* ¶ 7.) For reference, this is what the boat generally looks like:



Unfortunately, boat ownership was not smooth sailing for Shand. Just months after acquiring the Svaha, its "portside trim tab failed." (Doc. 33 ¶ 8.) The boat was sent to Porter's facility in Indiana for repairs. (*Id.* ¶ 11.) After several delays, Porter returned the boat to Florida with directions for Defendant Amzim Marine Services, LLC to "repair or replace the port side trim tab." (*Id.* ¶ 12.)

Amzim fixed the boat and returned it to Shand. (Doc. 33 ¶¶ 13-14.) It then flooded. An investigation revealed that "water had entered the Vessel through the portside interceptor/ trim tab." (*Id.* ¶ 27.) Shand submitted an insurance claim with Plaintiff Geico Marine Insurance Company, who sued Amzim. (Doc. 1.) Shand then moved to intervene and filed his own complaint adding Porter. (Doc. 23.)

Shand's operative complaint alleges Amzim "was negligent by damaging the boot and screws, failing to notice the missing flange, failing to connect the high-water alarm wire, failing to detect the malfunctioning bilge pump, and/or properly install the trim tab." (Doc. 33 ¶ 36.) As for Porter, Shand claims both direct negligence and vicarious liability for "Amzim's failure to properly install the trim tab." (*Id.* ¶ 43.)

At issue now is whether the case should proceed in Florida or Indiana. When Shand purchased the boat, he signed a contract with a forum-selection clause:

> ANY LITIGATION RELATED TO THIS LIMITED WARRANTY POLICY OR THE BOAT MUST BE MAINTAINED IN EITHER THE FEDERAL DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA, FORT WAYNE DIVISION (OR ANY SUCCESSOR JURISDICTION) OR IN A STATE COURT SITTING IN ALLEN COUNTY, INDIANA. YOU HEREBY IRREVOCABLY CONSENT AND SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE APPLICABLE FEDERAL OR STATE COURTS SPECIFIED HEREIN AND IRREVOCABLY WAIVE ANY OBJECTION YOU MAY HAVE BASED UPON IMPROPER VENUE, FORUM NON CONVENIENS, OR OTHER SIMILAR DOCTRINES OR RULES.

(Doc. 57-1 at 2.) Relying on this provision, Porter argues the claims against it must go to Indiana under 28 U.S.C. § 1404. (Doc. 57.) "By filing suit in Florida," Porter argues, "Shand violated . . . [the parties'] mandatory forum selection

3

clause requiring that any litigation related to the Limited Warranty or the Boat be initiated in Indiana." (*Id.* ¶ 11.)

## II. Discussion

The plaintiff, by suing, generally dictates where a case will proceed. "A plaintiff's choice of forum is entitled to deference, and there is a presumption in favor of a plaintiff's choice[.]" *Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009).[1] But this presumption evaporates "[w]hen the parties have agreed to a valid forum-selection clause." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). In such circumstances, "the plaintiff's choice of forum merits no weight" and "a district court should ordinarily transfer the case to the [designated] forum." *Id.* at 62-63.

Forum-selection clauses are creatures of contract. Given the presence of consent, a court presented with a mandatory[2] forum-selection clause must ensure it is valid, enforceable, and covers the dispute at hand. *See, e.g.*, *HNA*

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

[2] The Eleventh Circuit characterizes "forum-selection clauses as either permissive or mandatory." *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011). A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. A mandatory clause, by contrast, "dictates an exclusive forum for litigation under the contract." *Id.* Only the latter is enforceable. *Fla. Polk Cnty. v. Prison Health Servs., Inc.*, 170 F.3d 1081, 1083 n.8 (11th Cir. 1999). The plain language of the forum-selection clause here indicates it is mandatory, and Shand does not argue otherwise.

4

*LH OD, LLC v. Loc. House Int'l, Inc.*, No. 21-CV-21022, 2021 WL 4459404, at *5 (S.D. Fla. Sept. 29, 2021). Without "extraordinary circumstances" a forum-selection should be enforced. *Atl. Marine*, 571 U.S. at 62. "[T]he practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64.

Shand does not deny that his contract with Porter contains a forum-selection clause. Instead, he claims this provision is unenforceable. (Doc. 59 at 2.) His arguments are addressed in turn.

### A. Validity of the Forum-Selection Clause

"Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). With this standard, the party seeking to avoid a "forum-selection clause bears a heavy burden of proof." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592 (1991). "A forum-selection clause will be invalidated when: (1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Krenkel*, 579 F.3d at 1281.

5

Shand does not allege the forum-selection clause in his contract with Porter stems from fraudulent inducement or was improperly included to deprive him of some right. Nor does he dispute the existence of the agreement, its authenticity, or the authenticity of his signature. Shand instead challenges the forum-selection clause on grounds it was never reasonably communicated to him. (Doc. 33 at 9-10.)

When confronted with a non-negotiated forum-selection clause, as here, courts consider "whether the clause was reasonably communicated to the consumer." *Pappas v. Kerzner Int'l Bahamas Ltd.*, 585 F. App'x 962, 965 (11th Cir. 2014). Shand notes that the forum-selection clause is on a page separate from his signature, there is no warning about it, and the font size is "incredibly small." (Doc. 59 at 10.) The contract was also presented on the same day the boat was delivered, thus leaving "no time . . . to become meaningfully informed of the clause and reject its terms." (*Id.* at 11.)

Shand is right that a forum-selection clause must be reasonably communicated to the consumer. But that is as far as his argument carries him. This is not a case in which the forum-selection clause was concealed or obscured such that Shand should be excused from its requirements. It is set apart in a separate paragraph with a legible font that is capitalized to further differentiate it from the surrounding text. These characteristics actually make it the most clear and legible provision in the document. *See Krenkel*, 579 F.3d

at 1281-82 (upholding forum-selection clause where it was set apart in separate paragraph and contained plain language). Although the forum-selection clause does come after Shand's signature, the agreement indicates that more terms are contained beyond the first page. It was thus incumbent on Shand to keep reading.

Shand's claim that "there was no time [for him] to become meaningfully informed of the clause" is just as meritless. (Doc. 59 at 11.) Shand possessed the contract and signed it. There is no argument (let alone facts) to suggest that he was hurried or prevented from reading the document. Nor is there any evidence that Shand was deprived of the opportunity to consider and reject the forum-selection clause. All the record shows is that Shand executed the contract without objection. That is not enough to override the parties' bargain. *See Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1331 (11th Cir. 2011) ("[F]orum-selection clauses are presumptively valid and enforceable absent a *strong showing*[.]" (emphasis added)).

Finally, Shand emphasizes that the forum-selection clause came in a "standard form" contract. (Doc. 59 at 11.) But a forum-selection clause is not invalid simply because it comes on a pre-printed form. *Shute*, 499 U.S. at 593. The concern in this setting stems from the parties perceived unequal bargaining power, not how the contract is presented. The record here does not suggest that Shand held such an inferior bargaining position he was beholden

to accept Porter's terms. Shand was a sophisticated buyer purchasing a new 40-foot boat. He was thus in a position "to reject the clause, refuse delivery, and not proceed with the transaction. He could have also crossed out the forum selection clause or otherwise noted his refusal of the term." (Doc. 63 at 6.) Shand ultimately stands far afield from the helpless consumer that courts have sought to protect. *See, e.g.*, *Sun Tr. Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1261 (S.D. Fla. 2001) (declining to enforce forum-selection clause against a hotel guest in a foreign country with two small children who was not provided the contract with the forum-selection clause until check-in).

"In all but the most unusual cases . . . the interest of justice is served by holding parties to their bargain." *Atl. Marine*, 571 U.S. at 66. This is not an unusual case. The forum-selection clause is thus valid and enforceable.

### B. Scope of the Forum-Selection Clause

Next up is whether the forum-selection clause covers Shand's claims. *See, e.g.*, *Food Mktg. Consultants, Inc. v. Sesame Workshop*, No. 09-61776-CIV, 2010 WL 1571206, at *5 (S.D. Fla. Mar. 26, 2010) ("[A] court must decide whether . . . the [forum-selection] clause applies to the types of claims asserted and the parties involved."). "Under general contract principles, the plain meaning of a contract's language governs its interpretation." *Slater*, 634 F.3d at 1330. Thus, "[t]o determine if a forum-selection clause encompasses a

particular type of claim, we look to its language." *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 559 (11th Cir. 2016).

The Court need not spend long here. The forum-selection clause says it governs "any litigation related to this limited warranty policy or the boat." (Doc. 57-1 at 2.) Thus, to qualify, a dispute must relate to either the warranty or the boat. Shand's negligence claim against Porter (which is the only claim between the parties) inescapably relates to the boat. *See Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) (explaining that the term "related to" connotes "some direct relationship"). Shand alleges that Porter negligently caused the boat to sink. And the damages sought are the cost to repair the boat. Without the boat there is no dispute. The forum-selection clause thus applies. Enough said. *See, e.g.*, *Trump v. Twitter, Inc.*, No. 21-22441-CIV, 2021 WL 8202673, at *6 (S.D. Fla. Oct. 26, 2021) (applying similarly broad forum-selection clause).

## C. *Forum Non Conveniens*

If a valid and applicable forum-selection clause exists, as found here, the reviewing court must still conduct a *forum non conveniens* analysis to decide on the transfer. *Pappas*, 585 F. App'x at 967. This is because whether to transfer a case is a matter of discretion, even with a forum-selection clause. *See, e.g.*, *Trafalgar Cap. Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F. Supp. 2d 1274, 1281-84 (S.D. Fla. 2012).

9

Generally, transfer is appropriate if these criteria are met: (1) an adequate alternative forum is available, (2) it serves the interest of justice; and (3) it is convenient for the witnesses and parties. *See Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.*, No. 8:18-CV-2147-T-33SPF, 2018 WL 8369104, at *3 (M.D. Fla. Sept. 20, 2018). But the calculus changes "when the parties' contract contains a valid forum-selection clause, which represents [their] agreement as to the most proper forum." *Atl. Marine*, 571 U.S. at 63. "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, courts "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64.

The result is a modified *forum non conveniens* analysis that considers only (1) whether an adequate alternative forum is available, and (2) whether the public factors warrant transfer. *St. Francis Holdings, LLC v. Pawnee Leasing Corp.*, No. 8:20-CV-1101-T-02AAS, 2020 WL 6746329, at *4 (M.D. Fla. Nov. 17, 2020). Public-interest factors include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.*

One further wrinkle. The forum-selection clause here applies only to Shand and Porter. The remaining defendants—Geico and Amzim—are not parties to the agreement. Thus, only some claims and parties are contractually bound to Indiana.

The Eleventh Circuit has apparently never addressed the scenario where a forum-selection clause covers some, but not all, of the parties. Jurisdictions to do so, however, have adopted a broader *forum non conveniens* analysis that weighs the interests of the non-contracting parties. *See In re: Howmedica Osteonics Corp*, 867 F.3d 390 (3d Cir. 2017); *see also Clausen v. Burns & Wilcox, LTD*, No. 2:19-CV-605-FTM60NPM, 2020 WL 2425671, at *4 (M.D. Fla. May 12, 2020) (adopting the Third Circuit's test in *Howmedica*); *Chertoff Cap., LLC v. Syversen*, No. 1:20-CV-0138, 2020 WL 9348157, at *3 (E.D. Va. Dec. 8, 2020) (same); *Green Tech. Lighting Corp. v. Liberty Surplus Ins. Corp.*, No. 1:17-CV-00432-DCN, 2018 WL 1053529, at *3 (D. Idaho Feb. 26, 2018) (same).

This approach makes sense. The *forum non conveniens* analysis created to address forum-selection clauses was done to incorporate "the parties' agreement as to the most proper forum." *Atl. Marine*, 571 U.S. at 63. It ensures that parties are held to their bargain, which according to the Supreme Court, best serves "the interest of justice." *Id.* at 66. In crafting this test, however, the Court was careful to ensure that the interests of those outside the bargain are not cast aside. *Id.* at 64. The purpose of *Atlantic Marine* was to enforce a valid

11

forum-selection clause while also accounting for the interests of all other stakeholders. It is necessary, then, to address the rights of non-contracting parties when considering a limited forum-selection clause.

The dominant framework created by the Third Circuit in *Howmedica* (and since used by several courts in Florida) is a sequential inquiry that considers: (1) the forum-selection clause; (2) the private and public interests relevant to the non-contracting parties; (3) any threshold issues related to severance, and (4) which transfer decision most promotes efficiency while minimizing prejudice to non-contracting parties' private interests. 867 F.3d at 403-04. Both parties argue this four-part test and apply its factors without objection. (Doc. 63 at 6, Doc. 59 at 12-14.) The Court will thus do the same.

*1. The Forum-Selection Clause*

"At the first step, the court assumes that *Atlantic Marine* applies to parties who agreed to forum-selection clauses and that, in all but the most unusual cases, claims concerning those parties should be litigated in the [designated] fora." *Howmedica*, 867 F.3d at 404. As discussed, the forum-selection clause here is valid and encompasses Shand's negligence claim against Porter. There are also no "unusual circumstances" that justify overriding the parties' agreement. As a result, the Court must presume that Shand's case against Porter should go to Indiana. *Id.* at 407.

*2. Private and Public Interests Relevant to Noncontracting Parties*

Under step two, the reviewing court considers the private and public interests of the parties who have not signed the forum-selection clause—here, Geico and Amzim. *Howmedica*, 867 F.3d at 404. If this analysis points to the same location as step one, "then . . . the case [should] proceed in that forum, whether by transfer or by retaining jurisdiction," and the inquiry ends. *Id*. Otherwise, severance must be considered. *Id.* at 408.

The private interest factors are: "(1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Pappas*, 585 F. App'x at 967 n.5. The public factors include "the administrative difficulties flowing from court congestion[,] the local interest in having localized controversies decided at home[,] and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 967.

Several of the factors are neutral. The courts in Indiana are just as capable of handling this rather ordinary negligence case. And modern technology has reduced the importance of proceeding in the forum with immediate access to the sources of proof. The remaining factors, however, point to Florida. Most of the parties are either located in Florida (Amzim and Shand)

13

or have chosen this forum (Geico). Porter denies it ever repaired the boat. (Doc. 58 ¶11, Doc. 57 at 15.) Thus, all the alleged negligence necessarily occurred in Florida, and nearly all the relevant witnesses will be here too. Finally, the relevant property (*i.e.*, the boat) is in Florida. Given these facts, it will be more expensive and inconvenient to litigate the case in Indiana rather than Florida.

One factor does weigh heavily for transfer: judicial economy. Sending the entire case to Indiana would be the best solution from the Court's perspective, as it avoids fractured litigation and its attendant costs. But that alone is not enough to overcome the other Florida-centric considerations. The Court thus finds that the private and public interests relevant to the non-contracting parties favor keeping this case in Florida.

### 3. Threshold Issues Related to Severance

Because steps one and two point to different forums, severance must be addressed. *Howmedica*, 867 F.3d at 404. "At Step Three, [the court] consider[s] threshold issues such as the presence of indispensable parties and defects in subject-matter jurisdiction, personal jurisdiction, venue, or joinder, all of which may direct [the] severance analysis." *Id.* at 408. If severance is clearly "warranted to preserve federal diversity jurisdiction; to cure personal jurisdiction, venue, or joinder defect; or to allow for subsequent impleader" and "only one severance and transfer outcome satisfies the constraints identified at this step, then the court adopts that outcome and transfer inquiry ends." *Id.*

14

at 404. "But if more than one outcome satisfies the threshold severance constraints, then the court continues to Step Four." *Id.*

There are two threshold issues here. First is a matter of personal jurisdiction. Defendant Amzim is a Florida business that allegedly committed negligence in Florida. There is nothing in the record tying Amzim to Indiana, and Porter all but concedes that Indiana lacks personal jurisdiction over Amzim. (Doc. 63 at 10.) Having failed to establish that Amzim is amenable to suit in Indiana, the options for Porter are limited. This case cannot be transferred in its entirety. *See Howmedica*, 867 F.3d at 409.

Second, Shand claims an indispensable party prevents severance. (Doc. 59 at 17.) Notably, Shand does not identify who the indispensable is. Nor does he offer any argument applying Fed. R. Civ. P. 19 and its two-step inquiry for deciding whether a party is indispensable. (*Id.* at 17-18.) Shand essentially wants the Court to do the work for him. But it will not. *See Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1149 (11th Cir. 2017) ("[D]istrict courts cannot concoct or resurrect arguments neither made nor advanced by the parties."); *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("With

15

a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him.").[3]

The step three analysis thus leaves the Court with two options: either send Shand's claim against Porter to Indiana and adjudicate the rest here, or keep the entire case.

### 4. *Efficiency and Non-Contracting Parties' Private Interests*

Finally, at step four, the court chooses the most appropriate course by considering "efficiency and the non-contracting parties' private interests." *Howmedica*, 867 F.3d at 405. Only in the face of "overwhelming[] . . . countervailing interests [should] the court . . . decline to enforce a valid forum-selection clause." *Id.*

Here, as in *Howmedica*, efficiency favors keeping the case together in Florida. Shand's claims against Porter and Amzim will likely involve similar evidence, witnesses, and legal questions. It is axiomatic that related claims should proceed in the same forum. However, also as in *Howmedica*, the interests of efficiency do not outweigh the presumption in favor of enforcing the forum selection clause. While severance undoubtedly creates the risk of

---

[3] For what it's worth, there are no indispensable parties here. Amzim and Porter are accused of independent acts of negligence, and Porter also allegedly holds vicarious liability for Amzim. This dynamic renders no one indispensable. *See, e.g.*, *Axiom Worldwide, Inc. v. Becerra*, No. 808-CV-1918-T-27TBM, 2009 WL 1347398, at *4 (M.D. Fla. May 13, 2009) ("It is well-established that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."); *Depriest v. BASF Wyandotte Corp.*, 119 F.R.D. 639, 640 (M.D. La. 1988) ("Rule 19 does not require joinder of principal and agent.").

16

duplicative litigation for Shand, "that risk can be reduced or eliminated with procedural mechanisms . . . such as common pre-trial procedures, video depositions, stipulations, etc." *Id.* at 409-10. The non-contracting parties' interests also are not unduly prejudiced by severance. Geico and Shand have sued Amzim for its own negligence. Its liability thus does not depend on Porter or the proceedings in Indiana. And again, procedural mechanisms can effectively reduce any "risk of duplicative litigation." *Id.* at 410.

It is not lost on the Court that this result seems counterintuitive. Severing the negligence claim against Porter can only invite problems. But the Supreme Court has made clear that enforcing forum-selection clauses is the rule, not the exception. And only in the "the most unusual cases" should the parties' bargain be disrupted. *Atl. Marine*, 571 U.S. at 66. This case is simply not unusual enough under the framework the parties have asked the Court to apply.

### III. Conclusion

For the reasons above, the Court will exercise its discretion to sever and transfer Shand's negligence claim against Porter to Indiana. (Doc. 33, Count

17

II.)[4] This outcome accounts for the relevant private and public interests while allowing for enforcement of the forum-selection clause. It is thus **ORDERED**:

1. Defendant Porter Inc.'s Motion to Transfer Venue (Doc. 57) is **GRANTED**;

2. If no objection to this order is filed within the time allotted under Fed. R. Civ. P. 72, the Clerk is directed to sever Shand's negligence claim against Porter (Doc. 33, Count II) and transfer that claim to the Northern District of Indiana while leaving the rest of the case here;

3. If objections are timely filed, the Clerk is directed to hold disposition until so ordered by the District Judge.

**ENTERED** in Fort Myers, Florida this November 15, 2022.

Kyle C. Dudek
United States Magistrate Judge

Copies: All Parties of Record

---

[4] Because a motion to transfer venue does not address the merits of the case but merely changes the forum, it is a non-dispositive matter that does not require a report and recommendation. *See, e.g.*, *MobileMedia Ideas LLC v. Samsung Elecs. Co.*, No. 8:16-CV-1316-T-23MAP, 2017 WL 3720954, at *1 (M.D. Fla. Mar. 28, 2017); *Hartley v. Ellis*, No. 5:09CV46/RS/EMT, 2009 WL 564663, at *1 (N.D. Fla. Mar. 5, 2009).